The last case on the docket this morning is Peoples v. Brian Dennis. Ms. Lacey, good morning, and we have Ms. Shanahan here also. Good morning, Your Honor. I represent Brian Dennis, who is the young black man who is charged and convicted of armed robbery in the case below. I would like to begin with the most interesting issue, which is that the victim, Mr. Patel, testified that he did not identify Mr. Dennis in the courtroom. Mr. Patel also testified that he would be able to recognize the person that assaulted him because they had had an interaction with that person the night before. Mr. Patel testified that he had been given a photo lineup and Mr. Dennis was in the photo lineup. He didn't know that, but he could not identify Mr. Dennis in the photo lineup. And then Mr. Patel's wife also had the photo lineup and she could not identify any suspect from the photo lineup. The victim and his wife both made it very clear that if they saw the person that they saw the night before the incident, the robbery, they would be able to recognize that person and Mr. Dennis was not that person. Was this brought out in jury trial? Yes, sir. So the jury was aware of this? Your Honor, actually, after Mr. Patel testifies, a juror says, I can't understand him. And nothing was done to stop the trial or to see, to address that juror's concern. And if one juror… But this seemingly inconsistency was, in fact, presented to the jury, or at least argued to the jury, or at least they were aware of what the witnesses said. I'm not sure how aware they were of what he said if they couldn't understand him. But the transcript is easy. And Mr. Patel did say that they did not identify Mr. Bryan in the courtroom or in any other matter. And he would recognize the person who assaulted him. Apparently there was other evidence. Actually, Your Honor, what happened with respect to the other evidence, when the robbery was reported, the police had a description of the suspect, which was a young black male. They went out and they detained the first young black male the police officers found in the vicinity. That was Mr. Burnett. Now, Mr. Burnett also supposedly gave him consent to search his house. So the police had detained Mr. Burnett, gotten consent to search his house, and then Mr. Burnett says, You know, I remember seeing a black SUV in the area, and you might want to go see if… There's a guy I know named Bryan Dennis. He's got a girlfriend who's white. They live over here, and they might also have a black SUV. And so the police then monitored Mr. Dennis' home. He was living with Angela Tate. The police officer saw a white woman and a black guy get out of a black SUV. It's not the same brand that Mr. Burnett told them. I believe that they said that it was a Ford Explorer, but instead it was a Mercury Mountaineer. I mean, the way it reads, it's like, well, you see one black SUV… It's probably the same vehicle, different badging. Is that correct? You're probably correct. I'm sure you know a lot more than… I know what color a vehicle is. If I'm really good, how many doors it has. Usually four. Right. And if you don't count the back. Right. But Mr. Burnett had indicated some sort of SUV in the SUV. There was an SUV at the white lady's house with the black man living with her. The other evidence was when they searched the home, they found a sock with some money in it. The record doesn't state how much money is in it. There is a little picture of a sock with money in it that looked like very small denominations. Nowhere in the record does anybody say they counted the money or that there were any significant amounts of money. There's people in this house. I don't want to tell anybody, but my mom keeps a small stash of cash in a sock. How was that admitted into evidence? Did they have the sock and did they have the money or did they have a picture of it or what did they do? I believe they just testified about it. It was not admitted into evidence is my recollection. And I wasn't his attorney below, but I don't remember seeing it on the exhibit list. And there was no indication of how much it was. He said it was a little roll of money in various denominations. The most important aspect of this case is that the police officers actually testified in court. Not that Mr. Dennis was the person who was the suspect, but that the video showed Mr. Dennis was the person. So the police officer, when the defendant attorney, the public defender below, had requested that the videos not be admitted into evidence, the discussion was about foundation. And the state argued that the videos, that a proper foundation can be laid by the state without calling the technician who runs the surveillance equipment if Mr. Patel looks at the video and testifies that he identifies Mr. Dennis in the video as the person who accosted him on the day of the armed robbery. Mr. Dennis, I'm sorry, Mr. Patel does not do this at the trial. He does not lay the foundation when he is asked directly, do you see the person who accosted you in the courtroom today? His answer was no. I would recognize him if I saw him. He was the gentleman, the person who we saw the night before. They also never asked Mr. Patel, if you look at these videos, can you say that the person in that video is the same person as Mr. Dennis? Well, that's a question for the jury to decide, isn't it? Maybe? No, because of the record. Well, you can get a foundation for the video without saying that this is the same person that's in the courtroom. You are correct, but by the same token, actually they needed, they absolutely needed Mr. Patel to testify that Mr. Dennis was the same person in the video. They didn't have that testimony. They did not present that testimony at all. Mr. Patel's testimony was actually quite short, probably because once he couldn't identify him. Was the video introduced during his testimony, Patel's testimony? No. It was introduced when the police officer testified? Yes, the police officer, the chief person who was star witness number one. Where did you get this State's Exhibit 20? I got it from the scene of the crime. The owner gave it to me. Yes, that would have been accessible. He said this is the video that they run constantly during my score hours. Yes. Something like that. I haven't looked at the record yet. Mr. Patel did not testify to any of those things, and there's really no question that the video comes from the surveillance cameras there, but the star witness. It's your position that this video was not of the offense itself. It was some other time, or was this a video of the offense? It may have been. It was probably a video of the offense. I believe that the police officers were there timely, and that's probably what they saw at the time of the offense. They didn't see the offense, but they did, I'm sure, get the CD and the video. Why would that not be a proper foundation? Because it fails to identify Mr. Dennis as the person who is seen in the video. Why is that necessary for a proper foundation to have the evidence admitted? Because you would need to lay a foundation about somebody that is familiar with the event that is shown on the video. They could have done that if Mr. Patel had testified to that. I just thought you said that that was a video of the incident itself, so there wasn't any question about that. The question was whether or not this could accurately show your client's picture on there, I guess. It had nothing to do with the foundation for the admission of the video. It could have been a very poor quality. He could have never turned his head around there. There are all kinds of reasons why you could not make a positive indication. You are correct, Your Honor. But that wouldn't affect the foundation, the admissibility of the tape, would it? It would make it a plain error for the police officers to voice their opinion that the person on the video that they saw was also the person, Mr. Dennis, who had been tried for this case. That's what they were doing. It was the police officer's opinion that looking at the video and looking at Mr. Dennis, they thought that that was Mr. Dennis. That should have been objected to for maybe irrelevant material or whatever else it was. But that wouldn't have anything to do with the foundation for the admission of the tape itself. I mean, that would be maybe interfering with the function of a jury. The jury can look at it just as well as anybody else. They're the ones that have to decide whether or not it was your client or somebody else in there. You're right to a certain extent. But counsel below objected vigorously, even did a motion in limine to limit the police officer from doing opinion testimony about who was seen on the video. And without the police officer's opinion testimony, Your Honor raises a good question about the quality of the video. Mr. Hayes is the one who actually introduces the video. He says, quote, It appears to be someone come from the front door. There is a mirror here, around the mirror, that you can see shadows. I think he asked Mr. Patel here shortly what he, Mr. Patel goes around to the cooler. You see him walking in the mirror there. Helps the suspect find what he's looking for. Quoting directly, If you notice in the shadows here, they come back shortly. There, they come back. This does not capture the bottle being thrown at Mr. Patel. Shortly, the suspect will come in view from down here. Throughout Mr. Hayes' time, You have time for rebuttal. Thank you. Thank you. Justice Toner, my condolences on the loss of your mother. She has always been kind of a role model to me, although I never had the pleasure of meeting her. May I please the court. Counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. The defendant has chosen to address the question, issue two, and given the limited amount of time we have here today, I'll follow her lead. I have a very different recollection of the record as far as counsel, as far as Mr. Patel's testimony. It was my understanding from what counsel said here today that Mr. Patel said the defendant was not the person that he saw in the store. And I think my, I think the defendant's brief itself, her defendant's statement of facts, says Mr. Patel was confirmed that he was not able to pick anybody out of the photographic lineup, according to Mr. Patel. I was not sure about what guy, so I couldn't recognize him. And that's a quote cited in the defendant's brief. Did a police officer give an opinion as to who was in the video? Two police officers that saw the video after it was removed from the hard drive most definitely said, I am 100% sure. And was that objected to because they were not properly qualified as experts to give an opinion as to? The question of their ability to testify as a defendant's identity wasn't raised. These were not the officers that verified the accuracy of the video. Was there any opinion testimony given at the trial based upon who was in the video? Yes. And was there any objections as to the qualifications of this expert opinion? No. Okay. I'd also like to note that the issue raised at trial is not the issue on appeal. The issue raised at trial was that in order to establish a proper chain of custody, they needed Mr. Rick Hicks. He was the store owner. He's the one. The police went there. They viewed the video on the hard drive, the whole thing. Then with the police officer watching, he burned a DVD from the hard drive. And the issue at trial was that Mr. Hicks' testimony was necessary to lay the proper foundation. It was a chain of evidence question. Never at trial did they question the reliability of the videotape, whether it had been tampered with, whether it was an accurate representation of what happened. The question at trial was whether the chain of custody was established, whether they needed Mr. Hicks in order to complete the chain of custody. Therefore, it is the state's position that this entire issue is forfeited. I have cited to this case the Peeble v. Waldron, which is actually a videotaping case. And in that case, the defendant did not raise the issue. Actually, raised the issue and then kind of said, well, I guess the foundation is okay, but maybe it's the relevancy. And the appellate court said the issue that you raised at trial is not the issue that you raised here on appeal. Therefore, it's forfeited. And similarly here, and here I'm going to give a quote. Defense counsel said, and I quote, Hicks would be a necessary witness to lay foundation. The state then noted that it was not required to put every person in the chain of custody on trial. The prosecutor went on to say, and again, this is a quote, the motion does not indicate, and I don't believe that defense counsel would assert that the videotape has been altered or tampered with or otherwise raises an issue of that nature. Defense counsel was then given the opportunity to respond, and he didn't dispute the prosecutor's interpretation of the motion. Basically, he acquiesced that, yes, we're not saying it was tampered with or anything. We're saying that you need this other person to establish a chain of custody. When the video was admitted at trial, defense counsel reiterates his foundational claim based on Mr. Hicks' absence. So, therefore, at trial the question was chain of custody and foundation, whereas here on appeal the question is whether the videotape is true and accurate. Now, for the very first time, just a couple minutes ago, I heard defense counsel raise the question of plain error. It was not raised on appeal, and very recently our Supreme Court has noted that when a defendant does not even argue plain error, they cannot meet their burden of persuasion to establish plain error. So the only way this issue can be reviewed is under the plain error doctrine. Since the defendant never even argued plain error, they cannot establish this, nor do I feel even under the plain error standard that the defendant can meet the burden. Judge Fulmer asked this, but I've got to be clear. You're telling me during the trial they did not object to these policemen identifying the defendant as the person in the video? They did not object to that? I think I can tell you that pretty quickly if you want to know. Well, I don't know if plain error is necessary. I guess if they didn't preserve it in the post-trial motion, but... I'm looking very quick. It was Officer Nathaniel Franklin and Officer Kevin Jackson. I'm looking here at my notes that I took from the record, and I always make note of an objection. I see nothing in my notes. Officer Franklin and Officer Jackson both testified that they had previous knowledge of the defendant and that they were positive that the defendant shown in the video, that the man shown in the video wasn't the defendant. We'll search the record to see if there's an objection, but how is that permissible that a lay witness could, I mean, they had no expertise to identify him. They had the same ability as the jury to pick him off that video. How could that be permissible that policemen could do that? Because the videotape had been properly submitted to the jury, and the police officers can't always, basically, the reason the police... It didn't require expert testimony, did it? No, and they were not presented as experts. But they gave an opinion, though. They identified, well, let me put it this way. It was their opinion that this was the defendant on the day. What they said was, and here is probably a more accurate representation of their testimony, what they said was they looked at the videotape, they recognized the person in the video, and they then went to the defendant's house. This is just testimony that is regularly presented. You're telling us this wasn't offered for the truth of the matter asserted, but only to show why they took certain action? It's a continuing narrative of the events. Was the jury given a limiting instruction at the time? We don't know if there was an objection made. Okay, I just didn't know if there's some special way that these policemen can do that, and yours is that it wasn't offered as substantive evidence. No, it was simply they said, we saw him on the videotape. Because we saw him on the videotape, we went to his house. When we got to his house, this is what happened. This is a continuing narrative exception that comes up very frequently. They weren't saying, I'm an expert, I know. They were simply saying, because we saw someone we recognized, this is what we did. Do you have a quick enough memory of the closing arguments to know if the prosecutor used it that way or referred to it at all? And we can look at the record. I mean, I'm not asking you to memorize the record. Right. But it would seem tempting to a prosecutor to maybe use that argument as substantive evidence. Again, you will. What I have here is a quote from the prosecutor that says, most importantly, you got to see it yourself. That's correct. And that is a direct quote. Most importantly, you got to see it yourself. You got to watch this crime being committed. And I have one really short thing. Sure. A particular question you asked about whether the police officer had to identify the person in the videotape. And in People v. Taylor, the court says, authentication of a videotape does not necessarily have to include identification of the persons portrayed in the video. I would agree 100% with that last statement. No more questions. Thank you. Did his girlfriend testify in the trial? Yes, she did, Your Honor. And did she quote him as saying that he robbed the liquor store? She testified that she had overheard him on the phone and believed that he said that he had gone to good times and had robbed the liquor store, her friend. And essentially that was about the evidence. I think the important thing here is that this issue about the officers giving opinion testimony in the absence of the victim testifying that the video was a true and accurate representation was indeed raised below in the appendix even. One of the places is A48, page 48 of the appendix, C108. And they're essentially arguing, quote, whether the state can be precluded from offering opinion testimony regarding identity of the person on the video. So this is a complex issue and it has many twists and aspects to it. But the police officers giving opinion testimony in the context where the victim does not identify the defendant either in court or in the video was definitely raised below. And if the video was not properly admitted into evidence, the whole case falls on that ground. That was it for evidence. Now, I'd like to bring the court's attention to Officer Hayes' testimony again about the quality of that video. We all know that video, if it's altered or changed, then it's not admissible into evidence. And Officer Hayes testified to view a little bit better. I'm going to expand this window. Only thing is it's going to stretch the resolution out. That's on page C255 of the record. Whereas he's looking at this video, he says the first thing he's going to do is stretch it out. He says, quote, you can't really see what's going on behind the counter due to the rack there. You can see a shadow or some images of where the suspect is standing over Mr. Patel. The third video is actually a camera on the south wall facing to the counter. I quote, again, I'll enlarge it just to show a better, bigger screen. And at page 258 to 259 of the record, he says, every once in a while you get a glimpse in the mirror of a shiny silver object. Look very close. You see a shiny object and what appears to be the shiny end of the knife. There. There was a glimpse of it there. Now you watch in the mirror. So the main person in the case that testified against Mr. Dennis was basing his testimony on stretching out a video clip, enlarging it, and looking at the mirror shown in the video. And he himself says you can see the suspect in the mirror. You can see a shadow of the suspect here. And look over here. You can see a little bright, shiny object. So at no time does Mr. Hayes actually say he refers to the person as the word suspect. They don't say Mr. Dennis. Now, the other officers who testified to Mr. Dennis' being the person in the video actually said, first we were told that this is Brian Dennis in the video, and then we watched the video, and then we agreed that it indeed was Mr. Dennis in the video. So the only people besides police officers who watched the video, most of them after they'd been told it was Mr. Dennis in the video, the only other two witnesses were Mr. Patel, who said he could recognize the person because he'd met him the night before and this wasn't it, and Angela Tate, whose testimony was very brief, and she had previously told the police that she had overheard Mr. Dennis talk on the phone about robbing Goodtimes. Sorry, that's not the exact words. Angela Tate testified, actually, that Mr. Brian Dennis was her boyfriend, that she went to McDonald's, the co-worker took to work, wall rings, first rib, then she was stopped, handcuffed, put in a police car, and her house was searched. Thank you. Counsel, thank you for your arguments and your briefs today. We'll take them at our own advisement.